IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| M.A.P.S., on her own behalf and on behalf of others similarly situated,<br><br>    *Petitioner*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>    *Respondents*. | EP:25-CV-171-DB |

RESPONDENTS' OPPOSITION TO CLASS CERTIFICATION

Respondents hereby oppose, pursuant to Federal Rule of Civil Procedure 23, class certification in this case. The Government respectfully submits that this Court lacks jurisdiction to review the March 2025 Presidential Proclamation entitled "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua" ("TdA") or enjoin the President's exercise of authority under Article II and the Alien Enemies Act ("AEA"). Without jurisdiction, there is no basis to certify a class to resolve Petitioners' claims. Even if this Court determines that it has jurisdiction, it should nonetheless deny the motion for class certification because the information provided herein will establish that Petitioners fail to satisfy the Rule 23(a) requirements of commonality and typicality. Habeas claims are inherently individualized claims that have a historical tradition of being brought by individuals challenging the legality of their detention. Those claims cannot be adjudicated on a classwide basis and as a result the Court should decline to find Rule 23(b) appropriate for use in this habeas case. Therefore, for good cause, Respondents ask this Court to deny the motion for class certification.

1

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner M.A.P.S. alleges that she is detained at El Paso Processing Center in El Paso, Texas pursuant to the AEA and is at risk of imminent removal. ECF No. 1 ¶ 8. She further alleges that she fled Venezuela due to political persecution, entered the United States in April 2023, was later granted Temporary Protected Status, and is seeking asylum, withholding of removal, and protection under the Convention Against Torture from Venezuela. *Id.* Petitioner was arrested on April 9, 2025, and was provided notice that she had been designated as an alien enemy under the AEA sometime shortly thereafter. ECF No. 1 ¶¶ 11, 22. On May 10, 2025, Petitioner filed her Class Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition") (ECF No. 1), Motion for Class Certification (ECF No. 2) and Memorandum of Law in Support of Petitioner-Plaintiff's Motion for Class Certification (ECF No. 2-1), and Emergency Motion for Temporary Restraining Order (ECF No. 3). In her Motion for Class Certification, Petitioner seeks to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All noncitizens in custody in the Western District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United Sates by Tren De Aragua' and/or its implementation.

ECF No. 2-1 at 2.

Petitioner brings eight causes of action: (1) Violation of 50 U.S.C. § 21, *et seq.*, claiming that the Proclamation and its implementation fail to satisfy the AEA's statutory preconditions; (2) Violation of 8 U.S.C. § 1101, *et seq.*, arguing that the AEA process violates the Immigration and Nationality Act ("INA") by provided for the removal of Petitioner and the class without the procedures specified in the INA; (3) Violation of 8 U.S.C. § 1158 by preventing Petitioner and the class, through the AEA process, from applying for asylum; (4) Violation of 8 U.S.C. § 1231(b)(3),

2

the "withholding of removal" statute, through the AEA process by failing to ensure that Petitioner and the class are not returned to a country where it is more likely than not that they would face persecution; (5)Violation of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), claiming that the AEA process does not provide adequate safeguards to ensure that Petitioner and the class are not returned to a country where it is more likely than not that they would face torture; (6) Violation of 50 U.S.C. § 22, through the AEA process, by declaring everyone subject to the Proclamation to be "chargeable with actual hostility" and a "danger to public safety" without individualized assessments; (7) Violation of Due Process Under the Fifth Amendment by denying Petitioner and the class, through the AEA process, procedural protections to challenge removal; and (8) Violation of Habeas Corpus, claiming that the AEA process violates Petitioner and the class their right to habeas corpus. As the District Court for the Northern District of Texas recently noted, "although many of the claims and requested relief appear on their face to be broad, procedural arguments that may be appropriate for classwide resolution, the Court cannot ignore the fact that this case is a habeas case and not a civil case under the APA to effectuate their ability to seek habeas relief." *W.M.M. v. Trump* ("*W.M.M.*"), No. 1:25-CV-059-H, 2025 WL 1358476, at *11-12 (N.D. Tex. May 9, 2025) (understanding the petitioners to assert, in addition to their structural and procedural arguments, individualized habeas claims). On May 13, 2025, this Court granted Petitioner's motion for a TRO (ECF No. 3). ECF No. 16.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) requires that a class be represented by named plaintiffs who can establish that: (1) the class is so numerous that joinder of all of its members is impracticable; (2) the case involves questions of fact or law that are common to all class members; (3) the named plaintiffs' claims are typical of those of the class; and (4) the named plaintiffs will

3

fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Under Rule 23(b)(2), a class may be maintained only if all of the requirements of Rule 23(a) are satisfied and "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Moreover, even if a court were to grant class certification, it can later decide to decertify the class. Like certification, class decertification is discretionary, and the court "remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 n.16 (1982); Fed. R. Civ. P. 23(c)(1) ("An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."). The Fifth Circuit has made the stronger claim that district courts are obliged to reassess their class certification rulings throughout litigation. *M.D. v. Perry*, 294 F.R.D. 7, 66 (S.D. Tex. 2013) (citing *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983)) (courts have an ongoing duty to keep classes in compliance with Rule 23.). A court may reconsider its class certification order if compelling reasons substantially cast doubt on the composition of the class such as the class representative lacks a live claim, and changes in the law have occurred. *Kremens v. Bartley*, 431 U.S. 119, 130 (1977); *Hartman v. Duffey*, 19 F.3d 1459, 1470, 1474–75 (D.C. Cir. 1994); *Cleary v. Am. Airlines, Inc.,* No. 4:21-CV-00184-O, 2022 WL 5320126, at *8 (N.D. Tex. July 22, 2022) (relying on *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) where "Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.").

## ARGUMENT

**I.  This Court Should Deny the Motion to Certify a Class of Aliens Raising Claims Over Which It Lacks Jurisdiction.**

This Court lacks jurisdiction to review the Proclamation or enjoin the President's exercise of authority under Article II and the AEA. The Supreme Court has long recognized that courts cannot issue an injunction purporting to supervise the President's performance of his "official duties"—including "the execution of an act of Congress." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867); *Trump v. United States*, 603 U.S. 593, 607 (2024) (recounting that the President "has important foreign relations responsibilities: [including] . . . recognizing foreign governments, . . . overseeing international diplomacy and intelligence gathering, and managing matters related to terrorism, . . . and immigration").

Consistent with that general rule, courts have held that the President's authority and discretion under the AEA is not a proper subject for judicial scrutiny: "The authority of the President to promulgate by proclamation or public act 'the manner and degree of the restraint to which they (alien enemies) shall be subject, and in what cases,' is, of course, *plenary and not reviewable*." *Ex parte Gilroy*, 257 F. 110, 112 (S.D.N.Y. Feb. 28, 1919) (emphasis added); *see also id*. ("Once the person is an alien enemy, obviously the course to be pursued is essentially an executive function, to be exercised in the discretion of the President.").

Indeed, the Supreme Court recently held that "[c]hallenges to removal under the AEA, a statute which largely 'preclude[s] judicial review,' must be brought in habeas." *Trump, et al. v. J.G.G., et al.*, 604 U.S. ----, 2025 WL 1024097, at *1 (U.S. Apr. 7, 2025) (quoting *Ludecke v. Watkins*, 335 U. S. 160, 163−164 (1948)). The Supreme Court further held that an individual subject to detention and removal under the AEA is entitled to "'judicial review'" as to "questions of 'interpretation and constitutionality' of the Act as well as whether he or she 'is in fact an alien

enemy fourteen years of age or older.'" *Id*. at \*2 (quoting *Ludecke*, 335 U. S., at 163−164, 172, n. 17). "So, the detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U. S. 306, 313 (1950)). More specifically, the Court held that "AEA detainees must receive notice . . . that they are subject to removal under the [AEA]. The notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.*

Because jurisdiction in this context is limited to individual habeas claims challenging whether an alien has been properly included in the category of alien enemies – necessarily an individual determination – there is no basis to certify a class to resolve those claims. *See Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 753 (D.C. Cir. 2023) (class certification not appropriate where "questions of law or fact . . . affecting only individual members" predominate); ECF No. 1 ¶¶ 11, 22 (setting out Petitioner's specific factual circumstances); *see also Trump, et al. v. J.G.G., et al.*, 2025 WL 1024097, at \*8 (Sotomayor, J., dissenting) (noting that the issue before the Court was "'which procedural vehicle is best situated for the Plaintiffs' injunctive and declaratory claims': *individual habeas petitions filed in district courts across the country* or a class action filed in the District of Columbia").

II.   **This Court Should Deny Class Certification Because the Certified Class Fails to Meet the Requirements of Rule 23.**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamanski*, 442 U.S. 682, 700-01 (1979)). Federal Rule of Civil Procedure 23 governs class certification. To satisfy Rule 23, a putative class must first satisfy each of Rule 23(a)'s four requirements: (1) numerosity; (2) typicality; (3) commonality; and (4) adequacy. *See*

Fed. R. Civ. P. 23(a). If the putative class satisfies Rule 23(a)'s requirements, it then "must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes* ("*Wal-Mart*"), 564 U.S. 338, 345 (2011). Here, Petitioner relies on Rule 23(b)(2), *see* ECF No. 2 at 14-16, which requires that they show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

It is improper for a district court to certify a class action without first demonstrating that the plaintiffs have satisfied each of the requirements of Rule 23 after conducting a rigorous analysis. *Vizena v. Union Pac. R. Co.,* 360 F.3d 496, 503 (5th Cir. 2004) (citing *General Telephone Co. of Southwest,* at 161 and *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)).

### A.  Petitioners Cannot Show Commonality.

The "commonality" requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, the proposed class's "claims must depend upon a common contention." *Wal-Mart*, 564 U.S. at 350. Moreover, "[t]hat common contention . . . must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. *see also Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017). Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the class are what have the potential to impede the generation of common answers." *Id*. (citation omitted).

Petitioners cannot satisfy the commonality requirement because there are clear dissimilarities between the members of the proposed class that are dispositive of their legal claims. As described in *W.M.M.*, aside from their common claim that the Proclamation is invalid, the claims and defenses of the class are too varied, diffuse, and individualized to satisfy commonality because class members can be at myriad stages of removal proceedings or not in removal proceedings at all; with or without Temporary Protected Status; with or without pending fear-based applications; and at varying risk of current or future TdA designation based on their own individual circumstances. 2025 WL 1358476, at * 12-15 & n.6 (noting that commonality was undermined for the same reasons petitioners were not typical of the class, as the two inquiries merged). The Fifth Circuit instructs district courts to carefully consider the facts of the case and the elements of the Plaintiffs' claims before certifying a class. *See, e.g.*, *Ward,* 753 F. App'x at 246 (unpublished) (it is "incumbent on the district court to consider and discuss the facts to this case, as well as the elements of Plaintiffs' claims prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality."). Permitting individual Plaintiffs to proceed on their own would provide those individuals with an opportunity to fully present the precise facts of their particular case. *Alexander v. Hall*, No. 4:20-CV-21-SA-JMV, 2024 WL 4268017, at *13 n. 5 (N.D. Miss. Sept. 23, 2024).

To the extent the common allegation is that class members have all suffered a violation of the Due Process Clause—that is insufficient to satisfy commonality. *Wal-Mart*, 564 U.S. at 350. The allegation is particularly deficient because "due process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 321 (1976); *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (a class action may not be the proper vehicle to resolve Due Process claims because of the flexibility inherent in a Due Process analysis).

Because due process is a flexible concept, the dissimilarities inherent to each individual case would require a court to delve into the specific facts of each alien's case, thereby rendering it impossible to dispose of the class-wide claims in an efficient manner. It would be more efficient to address these issues in the context of individual habeas cases where the court may elect to stay individual removals for longer or shorter periods based on the allegations and strength of the Government's showing in individual cases. Moreover, determinations of whether an alien falls within the designation of TdA, and thus subject to removal under the AEA, are inherently fact-specific questions that cannot be resolved on a class-wide basis. Accordingly, the certified class does not meet the commonality requirement under Rule 23(a)(2).

### B. Petitioners Cannot Show Typicality.

Petitioners also fail to satisfy the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) "derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 598 (3d Cir. 2012). Thus, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." *Gen. Tel. Co. of the Sw.*, 457 U.S. at 156.

Here, M.A.P.S. has had notice of the Government's intention to designate under the AEA since the issuance of the Proclamation on March 14, 2025, and would therefore be entitled to significantly less notice going forward than the ordinary class member. *See* ECF No. 1 ¶ 11. Furthermore, M.A.P.S. is seeking asylum, withholding of removal, and protection under the Convention Against Torture, ECF No. 1 at 8, which *cannot* be said about all class members. As a

result, the class representative does not possess the same interest or suffer the same injury as the proposed class, and would not be entitled to the same relief.

Indeed, in *W.M.M.*, the court noted "meaningful differences between the petitioners and the putative class." 2025 WL 1358476, at *13. "First, while the three petitioners have filed asylum applications . . . the Court has no way of knowing how many putative class members have pending asylum applications or intend to file asylum applications. This distinction is material. If the petitioners do not prevail on their first claim regarding the President's Proclamation . . . but do prevail on their third claim for relief regarding the application of the INA's asylum provisions, then the due process required for members of the class would differ depending on whether the member of the putative class seeks to file or has already filed an asylum application." *Id.* at *13-14 (noting other "fact-specific" claims which are "fatal to typicality" including petitioners' claim "that they are entitled to seek withholding under the INA," "that the AEA process violates the Foreign Affairs Reform and Restructuring Act of 1998," "that the AEA process is ultra vires because it categorically declares that all persons subject to the Proclamation are chargeable with actual hostility," for "violation of due process under the Fifth Amendment," and for "violation of habeas corpus"). Thus, the fact that the named petitioner and the class may be denied due process in the abstract is "insufficient to create meaningful typicality when due process is by its very nature individualized." *Id.* at *14.

### C.  Petitioners Cannot Satisfy the Requirements of Rule 23(b)(2).

Even if a class proponent can satisfy Rule 23(a), she must still show that her claim comes within one of the three types of class actions permitted by Rule 23(b)(1), (2), or (3). *See* Fed. R. Civ. P. 23(b); see also *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). Here, Petitioner argues that she has satisfied Rule 23(b)(2). ECF No. 2-1 at 14-16. Rule

23(b)(2) provides that a class action can be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotations and citation omitted). "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

Here, Rule 23(b)(2) does not authorize class certification because each individual class member would be entitled to a different injunction or declaratory judgment against Respondents. Whether an alien is a member of Tren de Aragua; whether he has been given sufficient process; whether he is removable under a different provision of law; and other such questions necessarily are individualized determinations unsuitable for class treatment. *See W.M.M.*, 2025 WL 1358476, at *16 ("the fact that the petitioners are seeking individualized habeas relief . . . makes certification under Rule 23(b)(2) inappropriate").

To the extent Petitioner and the proposed class are entitled to some additional procedures under the Due Process Clause, those procedures would be different for each alien depending on the underlying facts and circumstances of their case because—as the Supreme Court has "stressed repeatedly"—"due process is flexible," and it "calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) and citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)); *see also Vallario v. Vandehey*, 554 F.3d 129, 1268 (10th Cir. 2009) ("Under Rule 23(b)(2), the injuries sustained by

11

the class must be sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members." (emphasis added) (citation omitted)). "A class consisting of some members who might be entitled to [relief] and others who are not lacks sufficient cohesiveness to obtain relief . . . under Rule 23(b)(2)." *Reid*, 17 F.4th at 11 (holding that a class of aliens seeking relief from mandatory detention in § 1226(c) could not be sustained under Rule 23(b)(2) because they were not all entitled to the same procedures). Although "having clear standards" with regard AEA removals may "make life simpler for all involved," a Rule 23(b)(2) class action seeking additional procedures under the Due Process Clause "does not provide a vehicle for preemptively announcing such rules." *Id.* at 12. Instead, standards should arise in the form of agency guidance or regulations or through "common law rules of precedential force, through case-by-case adjudication." *Id.* Under these circumstances, Petitioners cannot demonstrate that certification under Rule 23(b)(2) is proper.

### D. Any Certified Class Must be Limited to the El Paso Processing Center.

Finally, the class cannot extend beyond aliens in custody at El Paso Processing Center in El Paso, Texas. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). In adopting the "immediate custodian" rule, the Supreme Court rejected the "legal reality of control" standard and held that legal control does not determine the proper respondent in a habeas petition that challenges present physical confinement. *See Padilla*, 542 U.S. at 437-39. In unambiguous terms, the Supreme Court explained that, "[i]n challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Id.* at 439. Here, the warden of the detention facility—the person with

12

physical custody and control over the petitioner—is Petitioners' immediate custodian, not a local ICE Field Office Director who exercises only legal control. Indeed, *Padilla* makes clear that the warden of the detention facility, who has physical control over the habeas petitioner, is in fact the official who has the ability to "produce" the petitioner "that he may be released" pursuant to a writ of habeas corpus. *Id.*, 542 U.S. at 435; *see also, e.g.*, *Golding Sessions*, No. 18 Civ. 3036 (RJS), 2018 WL 6444400, at *3 (S.D.N.Y. Dec. 6, 2018) ("As the Supreme Court recognized in Padilla, a detainee's immediate custodian is the person who 'exercises day-to-day control' over his or her 'physical custody,' not the person who ordered such custody."); *Lemus-Pineda v. Whittaker*, 354 F. Supp. 3d 473, 475 (S.D.N.Y. 2018) (rejecting the argument that ICE NY Field Office Decker is the proper respondent where petitioner asserted that "decisions 'regarding whether to continue to detain or release ICE detainees' are made by the ICE field office," and instead finding "the fact that ICE makes decisions regarding Petitioner's detention 'do[es] not change the fact that the warden . . . is, quite literally, Petitioner's immediate physical custodian'").

Petitioner has named multiple wardens: Angel Garite, Warden of the El Paso Processing Center; Mary de Anda-Ybarra, Director of the ICE El Paso Field Office; Todd Lyons, Acting Director of ICE; ICE; Miguel Vergara, Director of the San Antonio Field Office; Bret Bradford, Director of the ICE Houston Field Office; Bobby Thompson, Warden of South Texas ICE Processing Center; Charlotte Collins, Warden of T. Don Hutto Detention Center; Rose Thompson, Warden of Karnes County Immigration Processing Center; and Murray Agnew, Warden of the Limestone County Detention Center. ECF No. 1 ¶¶ 23-24, 29, 35-40. Importantly, the only named Petitioner is detained at the El Paso Processing Center. ECF No. 1 ¶ 22. Petitioner provides no evidence regarding the other centers such as the number of putative class

members within each of those detention facilities. *See generally* ECF No. 2-1. Petitioner seems to suggest that the combined total of members of the putative class at any detention facility within the jurisdiction of the Western District of Texas should count towards the total. ECF No. 2-1 at 9. However, it is improper to extend the class beyond the El Paso Processing Center. *See Trump, et al. v. J.G.G., et al.*, 2025 WL 1024097, at *2. Petitioner makes no mention of *Padilla*, and cites to no authority that would allow for multiple detention facilities within one judicial district for a habeas class action with the immediate custodian rule at play. *See generally* ECF No. 2-1. Accordingly, to the extent a class is certified, it should be limited to one to which Warden Garite can afford uniform relief. *See* Fed. R. Civ. Pro. 23(b)(2) (relief must be "appropriate respecting the class as a whole").

### E.  Petitioners Are Not Able to Proceed as a Class on Their Habeas Claims.

Petitioner finally argues that this Court can certify a class under "habeas equity principles." ECF No. 2-1 at 16-17. But that is not the law of this circuit. This Court must consider whether a Rule 23(b)(2) remedy can sustain the class on its own. The Fifth Circuit has not recognized the availability of habeas class actions, and in *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018), the Supreme Court expressly questioned the basis for certifying class actions for individualized detention challenges. This Court should not stretch the class action remedy beyond its intended Federal Rule of Civil Procedure applications or allow Rule 23 to distort the traditional use of the writ to challenge the legality of individual detention decisions.

14

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioner's Motion for Class Certification.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Acting Director

SARAH WILSON
Assistant Director

/s/ Daniel M. Cappelletti
DANIEL M. CAPPELLETTI
Trial Attorney

May 16, 2025                              *Attorneys for Respondents*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 16, 2025, I filed the foregoing document with the Clerk of the Court through the Court's ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully Submitted,

<u>/s/ Daniel M. Cappelletti</u>
DANIEL M. CAPPELLETTI
Trial Attorney